# Zeigler *v.* South & North Ala. R. R. Company.

### Action to Recover Damages for Stock Killed.

1. *Legislative act; prima facie presumption as to constitutionality of.*—In pronouncing on the constitutionality of an act which has received the sanction of a co-ordinate department of the government—the legislative department—this court will indulge the presumption that such act is constitutional, until clearly convinced to the contrary.

2. *Same; when void for creating liability not in "due process" of law.*—An act which fixes absolute liability on a corporation to make compensation for injuries done to property in the prosecution of its lawful business, without any wrong, fault or neglect on its part, when, under the general law of the land, no one else is so liable under such circumstances, does not provide the "due process of law," under § 7 of the bill of rights, and is, therefore, void.

3. *Section 1704, Code of 1876, not distinguishable from act of 1877; what not a fair interpretation of the language.*—The "act to define and regulate the liabilities of railroad companies," approved Feb. 11, 1852, and carried from the Revised Code into the Code of 1876, as section 1704, is not distinguishable in

[Zeigler v. South & North Ala. R. R. Company.]

principle from the similar provision in the act of 1877; and although in the case of the *Nashville & Chattanooga R. R. Co. v. Peacock,* (25 Ala. 229), it was held that the liability was not absolute, but that circumstances tending to show that the killing was the result of accident, which could not have been avoided by the exercise of skill and care, could be shown in defense, such is not a fair and natural interpretation of the language.

4. *Sections of Code repealed by other sections.*—Likewise, it seems that the act of 1877, sections 1710–1715, inclusive, of the Code of 1876, necessarily superceded and repealed sections 1704 to 1709 of the same Code

5. *Due process of law; definition.*—"Due process of law" implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense; to be heard by testimony, or otherwise, and to have the right of controverting by proof every material fact which bears on the question of right in the matter involved. If any question of fact or liability be conclusively presumed against him, this is not due process of law.

APPEAL from the Circuit Court of Elmore.

Tried before the Hon. JAMES Q. SMITH.

This was an action brought on the 25th of September, 1877, by S. B. Zeigler, the appellant, against the South & North Alabama Railroad Company—a corporation chartered under an act of the legislature approved February the 15th, 1854—to recover $50.06 damages, as the complainant alleges, "for killing a yearling calf, the property of plaintiff (appellant), near Zeigler's crossing on defendant's railroad in said county, by running over or striking said yearling, by a locomotive or engine, &c., in employ of said company, on the 27th day of May, 1877." The defendant's counsel demurred, in short, by consent, to the complaint, and assigned as grounds of demurrer : 1st. It is not alleged that the killing of the yearling was occasioned by any default, negligence or omission of duty on the part of defendant, its servants, agents, or employees. 2d. The complaint does not show that defendant, its servants, agents, or employees, were guilty of any negligence or fault, or that said killing was occasioned by any fault, negligence, or failure of duty on part of defendant, its servants, agents, or employees. 3d. The act to define and regulate the responsibility of railroads for damages to live stock, or cattle of any kind, approved Feb. 3d, 1877, upon which said complaint is based, is unconstitutional and void. 4th. Said act impairs the franchise of defendant, given by its charter, and is therefore void.

The demurrer was sustained, and leave given to amend the complaint so as to show that the cause of action arose and was occasioned by reason of defendant's negligence. Issue was joined upon the amended complaint.

The case was submitted to the jury upon an agreed statement of the facts which, from the view taken of the case, need not be noted.

The defendant's counsel requested the court, in writing, to

give the following charges : 1st. The act to define and reg-
ulate the responsibility of railroads for damages to live stock,
or cattle of any kind, approved February 3d, 1877, is uncon-
stitutional and void. 2d. Said act impairs the franchise
granted to defendant by its charter, and is, therefore, viola-
tive of the Constitution of the United States, and void ;
which charges the court gave, and plaintiff excepted.

The ruling of the court in sustaining the demurrer, and
giving said charges, is now assigned as error.

H. C. BULLOCK, for appellant.

RICE, JONES & WILEY, *contra.*

No briefs came to Reporter.

STONE, J.—1. In pronouncing on the constitutionality of
an act of the legislature, the court necessarily passes judg-
ment on the legality of an act which has received the sanc-
tion of a co-ordinate department of the government. Hence,
the courts approach such inquiry with a due sense of its
magnitude and solemnity, and indulge the presumption that
the enactment in question is constitutional, until clearly con-
vinced to the contrary.—See *Sadler v. Langham,* 36 Ala.
311.

2. The only question of importance presented by this
record, arises on the constitutionality *vel non* of the first sec-
tion of the act " To define and regulate the responsibility of
railroads for damage to live stock or cattle of any kind," ap-
proved February 3, 1877.—Pamph. Acts, 54. That section
enacts, "That from and after the passage of this act, all cor-
porations, person or persons, owning or controlling any rail-
road in this State, shall be liable for all damages to live
stock, or cattle of any kind, caused by locomotives or rail-
road cars." This statute declares that railroad corporations
shall be liable, and make compensation to the owner, for all
damages to live stock caused by their locomotives or trains,
without any reference to the skill or diligence with which the
train is operated. It results that no matter what care, pru-
dence, watchfulness and skilled knowledge those having
charge of a train may employ, still, if damage to live stock
be caused by the train, the railroad corporation is responsi-
ble, unless the person owning such live stock contribute to
the injury ; but permitting live stock to run at large, shall
not be considered as contributing to such injury.—Section 3
of the act. It is obvious that under this statute, the highest
diligence could not avoid frequent injuries to live stock,

[Zeigler v. South & North Ala. R. R. Company.]

for which the corporation would be held accountable, if the act be constitutional. Two facts, and two only, are required to be shown, to authorize a recovery: ownership of the property, and injury by the locomotive or cars of the railroad. The graver inquiry of capacity and diligence in the conduct of the train, the law assumes to determine or dispense with. Is this "due process of law," under section 7 of the declaration of rights?

3. The act "To define and regulate the liability of railroad companies," approved February 10, 1852—Pamph. Acts, 45—is not distinguishable, on the question we are considering, from the act of 1877, *supra*. In *Nashville & Chat. R. R. Co. v. Peacock*, 25 Ala. 229, that statute came up for consideration, but the constitutionality of the act was not questioned in argument, or considered by the court. Our predecessor, however, did not interpret the statute as fixing inevitable liability on the railroad, whether the officers did their duty or not. The court said, "If there are any circumstances which tend to show that the killing was the result of accident, which could not have been controlled by the company by the exercise of the greatest degree of diligence and care on the part of their agents, this may be shown in defense; and if this is not satisfactorily done, the plaintiff is entitled to recover." The result of this ruling was to hold that the fact of injury to live stock by a railroad train, created only a *prima facia* liability. We do not think this was a fair and natural interpretation of the language employed by the legislature. They intended to declare an absolute liability.

4. In *Memphis & Charleston Railroad Co. v. Bibb*, 37 Ala. 699, we considered the act of February 10, 1852, *supra*, in connection with the later statute, February 6, 1858, and held that the latter enactment repealed the former so far, as to leave it for the jury to determine whether damage to stock, caused by the train, was chargeable to negligence or failure to conform to statutory requirements on the part of the railroad employees. Still, the first section of the act of 1852 was carried into, and constitutes section 1406 of the Revised Code, and is made section 1704 of the Code of 1876. And the first section of the act of February 3, 1877, copied above, is also carried into the Code of 1876, and constitutes section 1710 of said Code. It would seem that the act of 1877, sections 1710-11-12-13-14-15 of the Code of 1876, necessarily superceded and repealed sections 1704-5-6-7-8-9 of the same Code.

5. Judge Cooley, in his work on Constitutional Limitations, quotes with commendation the powerful and lucid definition

of the phrase, 'due process of law,' as given by Mr. Web-
ster in the great case of *Dartmouth College v. Woodward*, 4
Wheat. 518, 581, as follows : "By the law of the land is most
clearly intended the general law ; a law which hears before
it condemns ; which proceeds upon inquiry, and renders
judgment only after trial.   The meaning is, that every citi-
zen shall hold his life, liberty, property, and immunities un-
der the protection of the general rules which govern society.
Everything which may pass under the form of an enactment
is not, therefore, to be considered the law of the land.   If
this were so, acts of attainder, bills of pains and penalties,
acts of confiscation, acts reversing judgments, and acts
directly transferring one man's estate to another, legislative
judgments, decrees, and forfeitures, in all possible forms,
would be the law of the land.   Such a strange construction
would render constitutional provisions of the highest impor-
tance completely inoperative and void.    .    .    Judges would
sit to execute legislative judgments and decrees ; not to de-
clare the law, or to administer the justice of the country."
In another place, during the same argument, speaking of the
powers of the legislature, and their separation from the judi-
cial functions of the government, he said, " It [the legisla-
ture] shall not judge by *act ;* it shall not decide by *act ;* it
shall not deprive by *act;* but it shall leave all these things to
be tried and adjudged by the law of the land."

In the case of *Hoke v. Henderson*, 4 Dev. Law, 1, 15, Chief
Justice RUFFIN said, "The terms, 'law of the land,' do not
mean merely an act of the general assembly.   If they did,
every restriction upon the legislative authority would be at
once abrogated.   For what more can the citizen suffer, than
to be taken, imprisoned, disseized of his freehold, liberties
and privileges ; be outlawed, exiled and destroyed ; and be
deprived of his property, his liberty and his life, without
crime?   Yet all this he may suffer, if an act of assembly
simply denouncing those penalties on particular persons, or
a particular class of persons, be, in itself, a law of the land
within the sense of the constitution ; for what is, in that
sense, the law of the land, must be duly observed by all, and
enforced by the courts.    .    .    .    The clause itself means
that such legislative acts, as profess in themselves directly
to punish persons, or to deprive the citizen of his property,
without trial before the judicial tribunals, and a decision
upon the matter of right, as determined by the laws under
which it rested, according to the course, mode and usages of
the common law as derived from our forefathers, are not
effectually 'laws of the land,' for those purposes."

"Due process of law undoubtedly means, in the due course

[Zeigler v. South & North Ala. R. R. Company.]

of legal proceedings, according to those rules and forms which have been established for the protection of private rights. . . They were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice."—Cooley Cons. Lim. 355.

Due process of law implies the right of the person affected thereby to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense; to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved, If any question of fact or liability be conclusively presumed against him, this is not due process of law.

We have held that it is within the power of legislation to declare that certain proofs shall be *prima facie* evidence of specified facts. But, at the same time, we decided that the legislature could not constitutionally ordain that such proofs should be conclusive evidence of material facts in controversy. The first is a mere rule of evidence. The last has been characterized as 'a confiscation of property.'—See *Stoudenmire v. Brown*, 48 Ala. 699; *Davis v. Minge*, 56 Ala. 121; *Oliver v. Robinson*, at present term.

We have said above that the statute under discussion dispenses with all proof of the most material element of the wrong it seeks to redress. It declares that the railroad corporation shall make reparation for an injury inflicted in the authorized prosecution of its lawful business, without a semblance of fault, negligence, or want of skill in its employes; an injury, which no human prudence or foresight could prevent; and yet, the statute will not allow the railroad to exculpate itself, by proof of the highest qualifications and most watchful vigilance. This falls short of due process of law. We have heretofore declared a rule which exacts from railroad corporations a high degree of skill and diligence, to prevent injury to persons and property.—See *Tanner v. Louisville & Nashville R. R. Co.; Sav. & Memph. R. R. Co. v. Shearer*, and *S. & N. R. R. Co. v. Sullivan*, at the present term. We have no wish to modify that rule. But when these very useful corporations conform to this strict rule of diligence, we can perceive no reason, in law or morals, for holding them to a stricter measure of accountability for inevitable misfortunes, than would be exacted from natural persons for injuries which result from unavoidable accident; or accidents which no human prudence can foresee or avert.

It results, from what we have said above, that the Circuit

[Smith et al. v. Gayle.]

Court did not err in sustaining the demurrer to the complaint as first filed, and did not err in the charges given.

Affirmed.