# Birmingham Mineral Railrond Co. v. Parsons.

*Action for Damages for failure to Maintain Proper Cattle Guards.*

1.  *Constitutional law; act December 11, 1886, § 1, (Acts 1886-87, p. 163).* Acts 1886-87, p. 163, § 1, requiring railroad companies to put in cattle guards, and keep them in order, "whenever the demand is made upon them, or their agents or employes, by the owners of the land through which said road passes that said cattle or stock guard is necessary to prevent the depredation of stock upon their farm," is not in conflict with any provision of the State constitution because it leaves it to be determined by such landowners when such cattle guards shall be built.

VOL. C.

[Birmingham Mineral Railroad Co. v. Parsons.]

2.  *Same; § 2.*—Acts 1886-87, p. 163, § 2, providing that as to all stock passing over or through cattle guards on any line of railroad, and committing depredations on land, the company shall be liable for the damages proven, and all costs, etc., is unconstitutional, in that it imposes an absolute liability on the company for such damage, whether it is guilty of any negligence, or want of compliance with the requirements of the statute or not.

3.  *Insufficiency of complaint averring that stock gap was "left open."* In an action against a railroad company under such statute, a count of the complaint which alleges, as the ground of recovery, that defendant negligently and carelessly "left open" the stock gaps, is insufficient, since it is not intended that such gaps should be closed.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

Action by A. F. Parsons against the Birmingham Mineral Railroad Company to recover for damage to plaintiff's crops, caused by the failure of defendant to erect and maintain proper cattle guards on its road, where it entered plaintiff's land.

The complaint, as amended, contained three counts. The gravamen of the first count is that the damage was caused by the defendant's failure, on the plaintiff's demand, to construct proper stock gaps where its road entered upon and left the plaintiff's fields, and that the stock gaps which the plaintiff had constructed were so carelessly, negligently, and unskillfully done that stock passed over them and caused the damage complained of. The gravamen of the second count is that, after the plaintiff's demand to erect stock gaps where its road entered upon and left plaintiff's land, the defendant so negligently and carelessly left open its said stock gaps, as constructed, that stock entered upon plaintiff's land and caused the damage complained of. The gravamen of the third count is that after the demand by the plaintiff the defendant negligently failed to put in stock gaps, of proper construction, and that, by reason of such failure, stock and cattle entered, through and by way of defendant's line of road, into the plaintiff's cultivated lands, where he had a crop, and caused the damages complained of. The defendant demurred to each of these counts, assigning to each count substantially the same ground of demurrer, which was, in effect, that at common law the defendant was not required to erect and maintain stock gaps where its road entered and left the plaintiff's lands, and that the statute approved December 11, 1886, (Acts 1886-87, p. 163,) creating such requirement is unconstitutional and void. The demurrer to the second count also proceeded on the idea that, if the statute referred to was constitutional, it created no duty on the

[Birmingham Mineral Railroad Co. v. Parsons.]

appellant to close its stock gaps. The demurrer to each of the counts was overruled, and the rulings of the court thereon constitute the only assignments of errors.

HEWITT, WALKER & PORTER, for the appellant, cited on the question as to the constitutionality of the act the following authorities.—*Zeigler v. S. & N. Ala. R. R. Co.*, 58 Ala. 594; *Bielenberg v. Mon. Un. R'y. Co.*, 20 Pac. Repr. 314; *Cottrell v. Un. Pac. R'y. Co.*, 21 Pac. Repr. 416; *Jensen v. Union Pac. R'y. Co.* (Utah Sup. Court); *Ohio & Miss. R'y. v. Todd*, 15 S. W. Repr. 56 (Ky.); *Denver & R. G. R. R. Co. v. Outcalt*, Vol. 7, No. 11, notes of cases relating to railway corporations, &c., by Edward Thompson Co.

W. R. HOUGHTON, F. D. NABORS, and KENNEDY & HICKMAN, for the appellee, cited on the constitutional questions *Ohio & Miss. R. R. Co. v. Cluther*, 82 Ill. 123; *Small v. C. R. I. R. R.*, 50 Iowa, 336; *R. R. Co. v. Newbrander*, 40 Ohio St. 15; s. c., 11 Am. & Eng. Cases, 480; *Chicago R. R. Co. v. Damser*, 119 Ill. 402; s. c., 19 Am. & Eng. Cases, 545. In the last two cases the point raised was that the places where the cattle guards were to be erected were not specified.—*McCall v. Chamberlain*, 13 Wis. 713; *Blair v. Milwaukee R. R.*, 20 Wis. 267 *Gorman v. Pacific R. R.*, 26 Mo. 441; *Nall v. St. Louis R. R.*, 59 Mo. 112; *Trice v. Hannibal R. R.*, 49 Mo. 438; *Spealman v. Mo. Pac. R. R.*, 71 Mo. 434; s. c., 2 Am. & Eng. R. R. Cases, 636; *Wilder v. Maine Cent. R. R.*, 65 Me. 332; *Union Pac. R. R. Co. v. DeBuck*, 3 L. R. A. 350; *Wilburn v. McCalley*, 93 Ala. 436; 3 Brick. Dig., p. 127, § 18; *Powell v. State*, 69 Ala. 10; *Bogan v. State*, 84 Ala. 449; *Lowndes County v. Hunter*, 49 Ala. 507; *Ex parte Cowert*, 92 Ala. 94; *McGraw v. Greene County*, 89 Ala. 410; *Stein v. Mayor*, 24 Ala. 591; *Clarke & Daviney v. Jack, et al.*, 60 Ala. 271.

HARALSON, J.—The demurrer to the complaint, which was overruled, presents a single question for our consideration,—that of the constitutionality of the act of the legislature, approved December 11th, 1886.—Acts 1886-7, p. 163.

It is entitled, "An act requiring railroads to build, and keep cattle and stock-guards in order, upon their respective lines of roads." Its first section is, "That all railroads within the territorial limits of the State of Alabama, shall be required to put in cattl> or stock-guards, upon their respective lines of roads, and keep the same in order, whenever the demand is made upon them, or their agents or employes, by

[Birmingham Mineral Railroad Co. v. Parsons.]

the owners of the land through which said road passes, that said cattle or stock-guard is necessary to prevent the depredation of stock upon their farms."

The second section provides, that on and after the passage and approval of the act, as to all stock passing over or through cattle-guards upon any line of railroads in this State, and committing depredations and damages to the owners of the land, the company shall be liable for the full amount of damages proven to have been sustained by the party damaged, and all costs accruing in the collection of said damages, which damages can be recovered by suit in the justice or circuit courts of Alabama, where such damages were committed; *provided*, that the railroad company can only be required to construct cattle-guards whenever said company's road enters the field, or upon the premises of any person, or where the premises, or any portion of the same, are exposed by reason of said road entering upon them, or running through them.

2. It is well understood, that railroad companies are not bound by any principle of the common law, to fence their roads, make cattle-guards, or erect any other barrier or stay against the intrusion of stock upon their roads or right of way, and are not liable for injuries happening, merely for want of such erections.—7 Amer. & Eng. Encyc. of Law, pp. 906, 912; 1 Rorer on Railroads, 614; *Mem. & Ch. R. R. Co. v. Lyon*, 62 Ala. 71. Whenever a company is under obligation to fence its right of way or erect cattle-guards, it is by virtue of a contract or statute.

On the other hand, it is equally well settled, that acts of incorporation of railroad companies are subordinate to the general police regulation of the State, and that the requirement to fence their right of way, and erect and maintain cattle-guards, falls legitimately within legislative authority. As is well said in the *Am. Un. Tel. Co. v. West. Un. Tel. Co.*, 67 Ala. 26, "The police power of a State is a most important power essential to its very existence, and has been declared by the supreme judicial interpreter of the Federal Constitution to embrace, 'the protection of the lives, health and property of her citizens, the maintenance of good order, and the preservation of good morals; and the legislature can not by any contract divest itself of the power to provide for these objects.'"—*Beer Co. Massachusetts*, 97 U. S. 25; *Van Hook v. City of Selma*, 70 Ala. 361; *L. & N. R. R. Co. v. Baldwin*, 85 Ala. 619; 7 Amer. & Eng. Encyc. of Law, 907.

The unconstitutionality of the act we consider, is insisted on: *First*, "because it requires the railroad to erect cattle-

guards, whenever demand is made upon it by the owners, that the cattle or stock-guard is necessary to prevent the depredation of stock upon their farms, thus making the land owner the sole judge of the necessity, and from whose decision the railroad has no appeal. This objection relates, expressly, to the first section of the act.

The criticism can not be sanctioned. This is a mere option which the statute gives the owner of the land. The guard if, and when constructed, is for his benefit alone. The public has no interest in it, further than the general interest every good citizen feels, that every other person shall be protected in his rights of property. And, of what detriment can it be to the railroad, that the owner is permitted to exempt it from a duty which, without his exemption, would be absolute, whether the owner needed or desired the cattle-guard or not? If the statute had simply required the companies to erect and maintain these guards, in all instances, whenever they entered the field or premises of a party, there could, under the authorities, be no objection raised to the validity of the law. Why, then, should the statute, if, in its enactment, it would lighten the burden, if any, of the corporations, without injury to the persons whom it was designed to benefit, by bestowing this option on them, incur judicial displeasure? The point of this suggestion becomes more pertinent, when it is remembered, that when the duty to fence or build cattle-guards is made absolute, without reference to an option on the part of the owner of the land, the owner may release the obligation,—as seems to be well settled.—7 Am. & Eng Encyc. of Law, 907; 1 Thompson on Negligence, p. 526, § 26.

The case of *Ohio & M. R'y Co. v. Todd*, 15 S. W. Rep. (Ky.) 56, is opposed to this view, and holds that this power of police regulation can not be delegated to the citizen. No authority upon which the decision is based is given. The Constitution of this State certainly contains nothing against the bestowment of such an option on the land owner, in connection with the exercise of this police jurisdiction and authority; and we are at a loss to see, on what principle it can be denied. The states delegate this power without question, in their creations of municipal governments, railroad commissions, medical and examining boards, quarantine commissions, the bestowment of the authority for the creation by the people of counties and parts of counties, of agricultural districts in which fences may be dispensed with, and stock not allowed to run at large, and in other instances, perhaps, which might be named ; and it can be readily seen,

that this police authority may be more safely and beneficially exercised, often, in leaving its exercise to the option of others, within prescribed and proper limitations, than without.

II.  There can hardly be any question but that this second section imposes an absolute liability on railroad companies "for the full amount of the damages proven to have been sustained by the party damaged, and all costs accruing in the collection of said damages," whether they have failed, or not, according to the requirements of the law, "to put in cattle or stock-guards upon their respective lines of roads and keep the same in order."  Indeed, this liability is clearly stated in the words of the section itself.  There are many conflicting authorities on this question, which we will not review or attempt to reconcile.  In the 7 Amer. & Eng. Encyc. of Law, 907, it is stated that, "Statutes have been passed in England and many of the States requiring railway companies to fence their tracks, (which includes cattle-guards *Ib.* 913), and holding them liable for all injuries occasioned by a failue to do so, irrespective of whether or not they have been guilty of negligence," in operating their trains, and many authorities, bearing more or less intimately on the question, are cited as supporting the text.—*Ib.* § 927.

Counsel for appellant, in their elaborate argument on the question, reviewing many of the authorities, conclude,— "We concede that if the act of 1886 had imposed absolute liability in cases where the railroad fails to erect gaps at all, in compliance with the statute, this would have been a valid police regulation, because a penalty imposed for a violation of the act.  But, the act of 1886 goes further, and imposes such absolute liability on the railroad, though it may have fully complied with the act in erecting and keeping in order its gaps, provided stock get over them and commit depredations.  It is therefore manifestly unconstitutional, because it attempts to impose absolute liability, when the requirements of the act may have been fully complied with, and no negligence exists.  This is not a valid police regulation."

This question is not a new one in this court.  In *Zeigler v. S. & N. Ala. R. R. Co.*, 58 Ala. 594, we had occasion to pass upon the validity of an act which provided, "That from and after the passage of this act, all corporations, person or persons, owning or controlling any railroad in this State, shall be liable for all damages to live stock, or cattle of any kind, caused by locomotive or railroad cars."  It was there

said of that statute, that it dispensed with all proof of the wrong it seeks to redress." It declares that the railroad corporation shall make reparation for an injury inflicted in the authorized prosecution of its lawful business, without a semblance of fault, negligence, or want of skill in its employes; an injury, which no human prudence or foresight could prevent; and yet, the statute will not allow the railroad to exculpate itself, by proof of the highest qualifications and most watchful vigilance. This falls short of due process of law. · · · We can perceive of no reason, in law or morals, for holding them (railroad companies) to a stricter measure of accountability for inevitable misfortunes, than would be exacted from natural persons for injuries which result from unavoidable accident; or accidents which no human prudence can foresee or avert." This case, in these utterances, has been many times approved by us and other courts.— *Wilburn v. McCalley,* 63 Ala. 436; *Mead v. Larkin,* 66 Ala. 87; *Davis v. The State,* 68 Ala. 58; *Green v. The State,* 73 Ala. 26; *Nashville & C. R. R.R. Co. v. Hembree,* 85 Ala. 481.

Under the influence of these decisions, we are constrained to hold that the second section of said act, in that it imposes an absolute liability on railroad companies, irrespective of compliance on their part with the duties prescribed in its first section, and without any fault on their part, is in violation of constitutional right.

The first section, however, without reference to the second, and independently of it, prescribes the duty on these companies, "to put in cattle or stock guards upon their respective lines of road and keep the same in order," and for a failure to do so they are liable to the party injured by their neglect. To prescribe the duties imposed by this section, we have seen, is a valid exercise of the power of the State. It may be maintained as such, separate from the second section.—3 Brick. Dig. p. 128, § 28; *Ex parte, Cowert,* 92 Ala. 94.

And, "every person while violating an express statute is a wrong doer, and as such is *ex necessitate* negligent in the eye of the law, and every innocent party injured thereby, is entitled to a civil remedy therefor"; and when a duty is required and no remedy provided for its breach, the remedy is by common law procedure.— *Gray v. Mobile Trade Co.* 55 Ala. 387; *Lowndes Co. v. Hunter,* 49 Ala. 507 ; *Autauga Co. v. Davie,* 32 Ala. 703.

III. The demurrer to the first and third counts in the complaint, were properly overruled.

[Jackson v. Elliott.]

The second count bases a recovery on the allegation, that the defendant, "so negligently and carelessly *left open* their stock gaps on that part of its said road, which runs through the said land of the plaintiff that" &c.—specifying the damages suffered.

We are not certain of what is meant by leaving stock gaps *open*, and what negligence is attributed to defendant in so doing. Consulting our knowledge of such barriers against stock, we would suppose they were never designed to be closed, but always open. The duty prescribed by the statute, is to put in cattle-guards and keep them in order, and not to keep them closed. It would seem, therefore, that defendant violated no duty to plaintiff in keeping the gaps open, and the demurrer to the second count, for this reason should have been sustained.

For this error the judgment of the court below is reversed. and the cause remanded.

Reversed and remanded.