# Central of Georgia Ry. Co. v. Carroll.

## Injury to Crop by Trespass of Stock.

(Decided June 10, 1909. 50 South. 235.)

1. *Railroads; Operation; Cattle Guards; Common Law Duty.*— Under the common law a railroad was not required to erect or maintain cattle guards upon its right of way, and was not liable for injury resulting from the absence thereof.

2. *Same; Statutory Provision.*—Section 3480, Code 1896, requires erection of cattle guards under certain conditions, and being in derogation of common law is strictly construed.

3. *Same; Failure to repair; Damages.*—The measure of damages recoverable in an action for trespass of stock upon crops on account of failure to repair cattle guards, is the difference between the market value of the crop had not the stock damaged the same, and the market value of the crop actually raised, less the amount that would have been the reasonable cost of gathering and marketing that part of the crop destroyed.

4. *Same.*—Where the action sought damages only to the crop and not to the land or freehold, and the plaintiff was the sole and exclusive owner of the crop, the fact that he owned only one fifteenth of the freehold, as a tenant in common, would not require that his recovery be limited to one fifteenth of the amount of damage to the crop; being the owner of the crop he is entitled to all the damages.

5. *Same; Erection and Repair; Demand.*—Section 3480, Code 1896, requires only that a demand be made to compel the erection of cattle guards; once erected, no further demand to keep them in repair is required.

(Mayfield J., dissents in part.)

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by I. S. Carroll against the Central of Georgia Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

It is deemed unnecessary to set out the pleadings. The following part of the oral charge of the court is excepted to: "If you believe from the evidence that the plaintiff is entitled to recover, then the measure of his damage in this case is the difference between the fair and market value of the crop actually raised and gathered on said lands in the year 1905 and the fair and reasonable market value of the crops that would have been raised on said lands in said year, considering the way the crops were worked, had no stock come in over the stock gap on defendant's roadbed and destroyed said crop, less the reasonable cost of gathering, housing, and marketing that part of the crop that was destroyed." The following charges were refused to the defendant: (1) Affirmative charge. (2) "The court charges the jury that, if they believe from the evidence in this case that I. S. Carroll owned only one-fifteenth interest in the land on which the crop, for injury to which this suit is brought, is grown, then he can only recover a one-fifteenth amount of the damages done said crop."

ESPY & FARMER, for appellant.—The right of action did not exist at common law, and hence, the statute

must be strictly ·construed.—*L. & N. v. Murphy,* 129 Ala. 432; *Bir. Min. R. R. Co. v. Parsons,* 100 Ala. 662. In defining the measure of appellee's damages, the court erred.—*Bagley v. Columbus Southern,* 58 Am. St. Rep. 325; *Byrne v. M. & S. L. Ry. Co.,* 8 Am. St. Rep. 668; *Gerson v. Taylor,* 51 Ala. 505; *Burton v. Holly,* 29 Ala. 318. No one except the owner of land can recover in this action.—*L. & N. v. Murphy, supra.* Hence, the court erred in refusing charge requested by appellant.

R. D. CRAWFORD, for appellee.—No brief came to the Reporter.

MAYFIELD, J.—This was an action of case brought by appellee against the appellant railroad company, to recover damages for the destruction of plaintiff's crops, caused by the trespassing of live stock upon the same, which injury is alleged to have been the result of the negligence of the defendant company or of its agents in failing to keep and maintain stock gaps or cattle guards in good condition and repair at the points where the defendant company's railroad track crossed the boundaries of plaintiff's land. The complaint contains two counts; the second being added by amendment on April 6, 1907. The original complaint was filed on the 15th day of January, 1906. The defendant filed demurrers to the original complaint and to the amended complaint, demurring to each count separately, and assigning several special grounds of demurrer. The demurrers being overruled to the complaint, the trial was had upon the general issue, resulting in a verdict and judgment for the plaintiff in the sum of $250. From the judgment the defendant appealed, and here assigns as error the overruling of defendant's demurrer to each count of the complaint, and that part of the oral charge of the court which

is set out in the bill of exceptions and in the assignment of error, and also the refusal to give written charges requested by the defendant, which are set out in the bill of exceptions and in the assignment of error.

.The plaintiff evidently bases his right of action in this cause on section 3480 of the Code of 1896. This section of the Code reads as follows: "3840. Cattle Guards.— Every person or corporation operating a railroad must put cattle guards upon such railroad and keep same in good repair whenever the owner of the land through which the road passes shall make demand upon them or their agents and show that such guards are necessary to prevent the depredation of stock upon his land." · This section is now amended in the Code of 1907 (section 5513); but of course such amendment has no application in this case. The cause of action attempted to be alleged is based solely upon this section of the Code, and without this statute there could be no valid contention that it states a cause of action, for the reason that it has been repeatedly decided by this court that railroad companies are not bound by the common law to erect or maintain cattle guards or stock gaps upon their right of way or roads, and that they are not liable for injuries resulting from the want of such erections. *M. & C. R. R. Co. v. Lyon,* 62 Ala. 71; *Birmingham Min. R. R. Co. v. Parsons,* 100 Ala. 665, 13 South. 602, 27 L. R. A. 263, 46 Am. St. Rep. 92; *L. & N. R. R. Co. v. Murphree,* 129 Ala. 432, 29 South. 592. It therefore follows that, if the defendant railroad company be liable at all, it is liable by reason and by virtue of failing to observe the requirements of the statute. The statute being in derogation of the common law, and the law of this state, but for the statute, it has been held by this court to require strict construction.

The statute in question is a codification of, and is based upon, section 1 of an act of the Legislature of De-

cember 11, 1886 (Acts 1886-87, p. 163). This act was construed by this court, in the case of *Birmingham Min. R. R. Co. v. Parsons,* 100 Ala. 662, 13 South. 602, 27 L. R. A. 263, 46 Am. St. Rep. 92, before codification, and before it ever appeared in any Code of this state. In this case section 1 of the act upon which this section of the Code in question was based was held to be constitutional and within the police power of the state; but section 2 of said act was held to be unconstitutional for the assigned reason that it attempted to impose absolute liability on railroad companies, irrespective of compliance on their part with the duties prescribed in the first section of the act and of freedom from fault on their part, thus following the case of *Zeigler v. S. & N. R. R. Co.,* 58 Ala. 594, in which case the court say: "We can perceive of no reason, in law, or morals, for holding them (railroad companies) to a stricter measure of accountability for inevitable misfortunes than would be exacted from natural persons for injuries which resulted from unavoidable accident, or accidents which no human prudence can foresee or avert"—citing a number of cases in support of the same doctrine. On account of section 2 of said act being held unconstitutional and void in *Parson's case,* it was omitted from the Code of 1896 by the commissioner while section 1 of the same act was retained and codified, and the act adopting the Code of 1907, of course, repealed section 2 of that act, which was thus omitted from the Code.

It will be observed from a reading of the statute that all persons or corporations operating railroads in this state must erect cattle guards upon their railroads and keep the same in good repair, whenever the owner of the land through which the road passes shall make demand upon them or their agents and show that such guards are necessary to prevent depredation of stock upon his

[Central of Georgia Ry. Co. v. Carroll.]

land.   It will also be noted that this statute does not impose absolute liability to erect or maintain such cattle guards in all cases, but only in those cases in which the owner of the land through which the road passes shall make demand for them and show that such guards are necessary to prevent the depredation of stock.   Conse-quently there can be no duty without such demand and showing by the owner to the railroad company or its agents, and, of course, if no duty exists, there can be no breach thereof.   That no duty rests upon the railroad company to erect or maintain such cattle guards until demand and a showing be made, was decided by this court in the case of *L. & N. R. R. Co. v. Murphree,* 129 Ala. 432, 29 South. 592, where it was held that demand made by the tenant, instead of by the owner of the land, was not sufficient.   This case, therefore, expressly de-cides that a demand by the owner of the land is necessary to fix the duty or liability upon the railroad company, and we can see no reason why it is not as necessary that the owner should show that such guards are necessary to prevent depredation of stock as it is to demand that they be erected or maintained.   The statute requires both the demand for the guards and the showing that they are necessary; and, as the statute must be strictly construed, it must be held that the demand alone, with-out the showing of necessity therefor, is insufficient.

The first count of the complaint makes no attempt to allege a demand or a showing for the erection or maintenance of such cattle guards; while the second count alleges a demand, and that it was made prior to the commencement of the injury complained of, and is sufficient as to the allegation of demand for the repair or maintenance in good condition of the stock gaps. There is no attempt therein to allege that it was shown to the defendant railroad company, or to its agents,

that such repair and maintenance was necessary to prevent the depredation of stock on plaintiff's land. The demand, and the showing as to the necessity, we hold are necessary allegations in the complaint, under this section to the recovery of damages for failure to erect, or to maintain in good repair, cattle guards or stock gaps, as required by this section of the Code. Several grounds of demurrer were leveled against each count of the complaint, because of failure to allege a demand to keep said stock gaps in good repair, or a showing made that the stock gaps or cattle guards were necessary to prevent depredations by stock on the lands. While the second count sufficiently alleged a demand, it did not allege that there was any showing, or attempt to show, that the repair of the stock gaps was necessary to prevent depredations by stock on the lands. It was, therefore, reversible error for the court to overrule the demurrer as to each of the counts of the complaint; and such ruling would have been equally error, had the demurrer been addressed to the amended complaint as a whole, and not to each count thereof.

We have examined that portion of the oral charge excepted to by the defendant, and find it to be a correct exposition of the law as to the measure of damages, in so far as it attempts to measure the same.

There was, likewise, no error in the court's refusal to give the charge, requested by the defendant, which sought to limit the recovery of the plaintiff to one-fifteenth of the amount of damages done to the crop, because he was only the owner, as a tenant in common, of an undivided one-fifteenth interest in the lands upon which the crop was grown. While it is conceded that the plaintiff owned only an undivided one-fifteenth interest in the land, yet the evidence was undisputed that he owned the entire crop grown upon the land, which

was destroyed and for which damages were sought to be recovered; such being the only damages sought to be recovered in the action. There was no attempt to recover any damages in this case, other than those for the destruction of the crop growing upon the land, which was the absolute and exclusive property of the plaintiff alone; and the fact that he owned only an undivided one-fifteenth interest in the land upon which the crop was grown was no reason for limiting his damages to one-fifteenth of the total damages suffered.

Counsel for defendant are in error when they suppose that the plaintiff could not own the crops unless he owned the lands, or had leased the lands on which they were grown. The possession of one tenant in common is the possession of all. One tenant may cultivate the whole of the common property without being liable to his co-tenants for rent or damages, and without his co-tenants being entitled to any part of the crops, in the absence of a contract, or unless his entry be hostile and exclusive. The rule is different, however, where one tenant in common receives rent from a third party for the use of the property for then he may be compelled to account without an agreement, and without the hostile or exclusive entry.—*McCraw v. Barker* 115 Ala. 543, 22 South. 131; *West v. West,* 90 Ala. 458, 7 South. 830; 4 Mayfield's Digest, p. 931, §§ 51, 52.

*Murphree's Case, supra,* which is cited and relied upon by defendant's counsel, only decided that the demand for the erection or maintenance of cattle guards must be made by the owner. It did not decide that the action could not, under the statute, be maintained by a tenant if the demand be made by the owner. Nor is it necessary for us to decide in this case that the tenant can or cannot maintain an action under the statute, because

the plaintiff was the owner of both the land and the crop for all purposes necessary to the maintenance of this action. *Murphree's Case, supra,* simply decided that the demand must be made by the owner, and not by the tenant—that, and nothing more.

By reference to the original statute, of which this section of the Code is a part, it will be seen that it was the intention of the Legislature to protect the crops and to make defendant railroad companies liable for the destruction thereof on account of their failure to comply with the statute; and as the only damages sought to be recovered in this action where damages to the crop, and not to the land or freehold otherwise, and the plaintiff being the sole and exclusive owner of the crop, it should and could not affect the amount of his recovery that he was only a tenant in common, owning an undivided one-fifteenth interest in the land. If there were an attempt in this action to recover damages to the freehold or the fee in these lands, then there might be some question as to what part of the entire damages plaintiff was entitled to recover; but he being the sole and exclusive owner of the crop destroyed, and damages to that being the only damages sought to be recovered in this action, there can be no doubt that the plaintiff, if entitled to recover at all, is entitled to recover all the damages suffered, in the destruction of the crop, on account of defendant's failure to maintain stock gaps or cattle guards as required by law. It therefore follows that there was no error in the court's refusal to give the other charge requested by the defendant; it being merely the affirmative charge in favor of the defendant.

The other Justices do not concur in what is said in the above opinion as to the necessity of a demand by the owner to maintain and repair stock gaps after they are

once erected, but adhere to the opinion in the case of *A.,
B. & A. Ry. Co. v. Brown*, 158 Ala. 607, 48 South. 73,
in which it is held that the demand is only necessary to
compel erection, and that, when the demand is once
made to place them, it then becomes the duty of the
railroad company to place them and to keep them in
repair without further demand. .

It follows, therefore, that there was no reversible
error in the record, and the judgment is affirmed.

Affirmed.

DOWDELL, C. J. and SIMPSON, ANDERSON, DENSON,
MCCLELLAN, and SAYRE, JJ., concur. MAYFIELD, J.,
dissents.