114 So.2d 135

**TENNESSEE CORPORATION**

v.

**W. H. BARNETT.**

7 Div. 393.

Supreme Court of Alabama.

Aug. 13, 1959.

Love & Hines, Talladega and Jas. H. Sharbutt, Childersburg, for appellee.

Frantz, McConnell & Seymour and R. M. McConnell, Knoxville, Tenn., Dixon, Wooten & Boyett, Geo. F. Wooten, Byron Boyett, Talladega, and White, Bradley, Arant, All & Rose, E. L. All and J. Reese Murray, Birmingham, for appellant.

STAKELY, Justice.

This case involves the measure of damages for injuries alleged to have been inflicted on a crop of growing cotton by the negligence of the defendants.

The suit was instituted by W. H. Barnett (appellee) who planted cotton in the general area of Childersburg in Talladega County. The damages are claimed to have been sustained by the emission of sulphur dioxide, sulphur trioxide or sulphuric acid from the plant of The Tennessee Corporation (appellant), which it operated in the

manufacture of sulphuric acid. It is specially charged that the injury to the cotton occurred on August 10, 1956.

Harry W. Moore was Superintendent of the plant and in charge of the operation of the plant. He was made a party defendant with his employer, The Tennessee Corporation.

The pleadings consist of one count and the pleas of the defendants of the general issue in short by consent in the usual and accepted form. The issues in the case are best stated by setting out the count on which the case was tried as follows:

"The plaintiff claims of the defendants, the sum of Seven Thousand, Seven Hundred, Seventy-four and no/100 ($7,774.00) Dollars as damages, for that heretofore on, to-wit, the 10th day of August, 1956, the defendant, Tennessee Corporation, a Corporation, was engaged in the business of making sulphur dioxide, sulphur trioxide, or sulphuric acid at or near Childersburg, Alabama, in Talladega County, Alabama, and the defendant, Harry W. Moore, while acting within the line and scope of his employment by defendant, Tennessee Corporation, as its superintendent, personally controlled and managed the operation of said business of the defendant, Tennessee Corporation, a Corporation, at said time and place.

"The plaintiff avers sulphur dioxide, sulphur trioxide, and sulphuric acid are dangerous agencies, harmful to vegetation and growing cotton and the defendants on said date had knowledge or from facts known to them should have had knowledge of the dangerous agencies of sulphur dioxide, sulphur trioxide, and sulphuric acid upon vegetation and growing cotton and the defendants on said date had further knowledge or from facts known to them should have had knowledge that cotton crops and other vegetation were planted, cultivated and harvested near the site of said business. And plaintiff further avers that on said date he was the owner of one of the said cotton crops growing near the site of said business which cotton crop is more fully described hereinafter.

"The plaintiff further avers that the defendant, Tennessee Corporation, a corporation, acting by and through its agents, servants, or employees, while acting within the line and scope of their employment as such servants, agents, or employees and the defendant, Harry W. Moore, while acting within the line and scope of his employment by the defendant, Tennessee Corporation, a corporation, as its superintendent, who personally controlled and managed said business, on the said date and at said place, knowing or having reason to know, that a 98 pump located within and constituting a part of the machinery of the plant of defendant, Tennessee Corporation, at said location was not properly operating, and knowing or having reason to know that unless said pump was properly operating that said plant when in operation would emit sulphur dioxide or sulphur trioxide into the atmosphere in such concentrations as would be dangerous to vegetation and growing crops, negligently operated said plant when said pump was not properly operating, thereby negligently permitting sulphur dioxide or sulphur trioxide to escape into the atmosphere in such concentrations as would be dangerous to vegetation and growing crops over an area where the plaintiff's cotton crop was planted and a portion of the said sulphur dioxide or sulphur trioxide did fall on the plaintiff's cotton crop, located at or near Childersburg, Alabama, more particularly described as Exhibit 'B' attached hereto and made a part hereof, and as the proximate consequence and result of the said negligence of the defendant, the Tennessee Corporation,

a Corporation, acting by and through its agents, servants or employees while acting within the line and scope of their employment as such agents, servants or employees of the defendant, Tennessee Corporation, a Corporation, and the negligence of the defendant, Harry W. Moore, while acting within the line and scope of his employment as its superintendent who personally controlled and manages said business, the plaintiff was damaged in this, to-wit: Said cotton crop was damaged and injured in that the leaves died, the plants were stunned, the bolls shriveled and were immature, the cotton fiber was made weak, the growth was abnormal, and the plaintiff lost much money and time.

"The plaintiff avers that he received all of his damages as the proximate consequence and result of the said negligence of the defendant, Tennessee Corporation, a Corporation, acting by and through its agents, servants or employees, while acting within the line and scope of their employment as such agents, servants or employees of the defendant, Tennessee Corporation, a Corporation, and the negligence of the defendant Harry W. Moore, while acting within the line and scope of his employment, by the defendant, Tennessee Corporation, a Corporation, as its superintendent, who personally controlled and managed said business."

The case was submitted to the jury on the issues made by the above pleading with the result that the jury returned a verdict against The Tennessee Corporation (appellant) only. Judgment was entered against The Tennessee Corporation only, which filed motion for a new trial which was overruled. This appeal followed.

Assignments of error 2, 3 and 4. Two of these assignments involve the action of the trial court in overruling appellant's objection to questions propounded to plaintiff by his counsel, one asking his opinion as to the market value of the growing crops of cotton in the field on August 10, 1956, and the other question asking his opinion of the market value of the same cotton as it stood in the same fields on August 11, 1956, as follows:

"Q. Mr. Barnett, basing your answer upon your experience as a farmer and your observation and examination of that cotton on the morning of August 10, 1956, which was last year, do you have an opinion as to the reasonable market value of that cotton in Talladega County, Alabama * * * on August 10th as it stood out in the fields in Talladega County, Alabama? What is that opinion?

"Q. Mr. Barnett, basing your answer upon your experience as a farmer and your observation and examination of that same cotton in that same field on the morning of August 11, 1956, which was last year, do you have an opinion as to the reasonable market value of that cotton as it stood in that field on the morning of August 11, 1956 * * * the market value in Talladega County? What is that opinion?"

The appellant objected to each of these questions, assigning as grounds: (1) it calls for a conclusion of the witness and invades the province of the jury. (2) It is not a proper criterion for arriving at damages such as claimed in this case. (3) It does not hypothesize sufficient facts upon which the witness may base his opinion. (4) With respect to the second of the questions relating to the value of the crop on August 11 all of the above grounds were assigned and in addition the ground that it is too remote and speculative and does not take into account conditions which took place after August 11, and that the cotton not being destroyed that the question does not present a proper criterion by which to measure damages.

The foregoing objections were overruled by the court.

Assignment of error No. 2 which raises the same basic question is appellant's exception to the following part of the oral charge of the court, guiding the jury in arriving at a proper amount of damages in the event it should find for the plaintiff:

"For injury to growing crops the measure of damages in cases of this kind is the difference between the reasonable market value of the growing crops immediately before and immediately after the alleged injury in the general locality of the place where the crop is growing."

The plaintiff planted 41 acres of cotton and gathered and marketed 31 bales. Plaintiff's witness Tanner, who cultivated a farm immediately adjoining that of the plaintiff and who claims that his growing crop was damaged in a manner similar to that in which the plaintiff's crop was damaged, cultivated 40 acres of cotton and gathered and marketed 37 bales. Tendencies of the evidence showed that insect infestation, including the boll weevil, was a problem throughout the 1956 season, that weather conditions prior to August 10, 1956, so vital to cotton yield, had unfavorable effects upon the cotton yield, which were not apparent on August 10th. The extremely dry and hot weather during the last 20 days in August had a substantial effect upon the yield.

This case was tried a year after the alleged damage was done and after the cotton was gathered, ginned, baled and marketed. It is insisted by the appellant that the proper measure of damage should be the difference in yield,—what the yield would have been had the crop not been damaged in the manner alleged and the actual yield less the reasonable cost of gathering, housing and marketing that portion of the crop which the plaintiff lost as a result of the alleged injury.

Whatever may be the rule in other jurisdictions, we think the Alabama cases support the insistence of appellant. The case of International Agr. Corp. v. Abercrombie, 184 Ala. 244, 63 So. 549, 551, 49 L.R.A., N.S., 415, was a case involving injuries to growing crops caused by sulphurous fumes from the plant of the plaintiff. The claim was presented by way of setoff to the notes sued on by the plaintiff. In the Abercrombie case this court said:

"The measure of damages was, of course, the difference in the yield and the price of the crops with, and without, the presence of the fumes complained about * * *."

It is important to note that the plaintiff did not complain in his complaint that the crop was destroyed. Rather he claimed that the growth of the crop was affected and his yield was reduced.

As we understand appellee's brief, it is conceded that "if the injuries complained of had been over a long period of time, certainly the method of the measure of damages would be as set out in the appellant's brief." So it is claimed that the injuries complained of in the Abercrombie case were from deleterious fumes emitted from time to time during the season but in the instant case the injuries all occurred on one day. We fail to see the distinction. It seems to us to be immaterial whether the injuries occurred at one time or over a period of time in a given season. There is only one crop involved.

Other Alabama cases are in keeping with the rule laid down in the Abercrombie case, supra.

In Alabama Great Southern R. Co. v. Russell, 254 Ala. 701, 48 So.2d 249, 251, this court made the distinction between the measure of damage to realty (before and after) and the measure of damages to growing crops (but—for). In its opinion this court said:

"The difference in value before and after the damages is the proper basis for fixing the amount when the damage includes the destruction of timber, whether the suit is in case or trespass * * *

"When other features of the realty are permanently injured the same general principle applies. This sometimes includes fences * * *. But this is not the rule in respect to damage to growing crops."

The same distinction is recognized in the case of Foust v. Kinney, 202 Ala. 392, 80 So. 474, 475:

"When the action is for a trespass to recover damages to real property, when the injury is done to the realty itself, the damage is measured by the difference between the value of the land before and after the trespass. * * * This is not the rule when the action is for negligence resulting in injury to lands, such as destruction of growing crops."

In the case of Central of Georgia R. Co. v. Carroll, 163 Ala. 84, 50 So. 235, the plaintiff brought suit against the railroad company to recover damages for destruction of growing crops caused by trespassing livestock. The trial court charged the jury as follows:

" 'If you believe from the evidence that the plaintiff is entitled to recover, then the measure of his damage in this case is the difference between the fair and market value of the crop actually raised and gathered on said lands in the year 1905 and the fair and reasonable market value of the crops that would have been raised on said lands in said year, considering the way the crops were worked, had no stock come in over the stock gap on defendant's roadbed and destroyed said crop, less the reasonable costs of gathering, housing, and marketing that part of the crop that was destroyed.' "

The giving of this charge was assigned as error on appeal. This court in passing upon the charge said:

"We have examined that portion of the oral charge excepted to by the defendant, and find it to be a correct exposition of the law as to the measure of damages, in so far as it attempts to measure the same."

In this case a yardstick, whether it be evidence or whether it be instructions of the court, which are designed to enable the jury to arrive at the fair, proper measure of damages, should relate to difference in yield rather than opinions with respect to value immediately before and immediately after the claimed injury, which deal with the problem prospectively and ignore the realities which have in fact occurred during the crop year and particularly after the date on which the damage is supposed to have been inflicted. Any measure or yardstick by which damages are to be arrived at which does not take into account actual yield is unreal and should be rejected. The charge of the court presents a measure to be employed by the jury which assumed a perfect or near perfect season after August 10th, perfect in rainfall, free of insect infestation, bacteria, tight-lock and all other Acts of God,—free from any harmful natural causes. It makes the appellant insurer to the plaintiff of the season he hopes for rather than the season which he realized. Furthermore the plaintiff is not entitled to a windfall by a failure to consider the reasonable cost of harvesting, housing and marketing the crop which is claimed to have been lost. A proper measure of damages should insure to the plaintiff compensation for the damages which he actually sustained and does not and should not penalize the defendant for the difference in yield for which it is not responsible. See American Smelting & Refining Co. v. Riverside Dairy & Stock Farm, 8 Cir., 236 F. 510, which involved alleged damages to growing crops caused by the emission of smoke, gases, fumes etc.

Since the case must be tried again, we see no good purpose in passing on other assignments of error in the case which have been insisted on since they all relate

to questions which may not be presented on another trial.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.